UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UGI UTILITIES, INC.,                                    :
            Plaintiff,                                  :
                                                        :
            v.                                          :    No. 5:25-cv-3142
                                                        :
CITY OF READING;                                        :
CITY OF READING CITY COUNCIL;                           :
CITY OF READING PARKING AUTHORITY;     :
and RAFAEL BATISTA, *EXECUTIVE DIRECTOR*:
*CITY OF READING PARKING AUTHORITY*;       :
            Defendants.                                 :

**O P I N I O N**
**RPA Motion to Dismiss, ECF No. 26 – Granted in part**
**City Motion for Judgment on Pleadings, ECF No. 32 – Granted in part**

**Joseph F. Leeson, Jr.**                                         **April 14, 2026**
**United States District Judge**

## I.    INTRODUCTION

This case is brought by a public utility provider alleging that the City of Reading's

Ordinances setting daily parking permit rates and the enforcement of these ordinances by the

Reading Parking Authority violates equal protection and due process.  For the reasons set forth

below, the Amended Complaint fails to sufficiently state a constitutional claim.  This Court

declines to exercise supplemental jurisdiction over the state law claims and dismisses the case.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff UGI Utilities Inc., initiated the above-captioned action pursuant to 42 U.S.C. §

1983 on June 19, 2025, against the City of Reading and the City of Reading City Council

(collectively "City Defendants"), as well as the City of Reading Parking Authority ("RPA") and Rafael Batista, the Executive Director of the RPA (collectively "RPA Defendants"). On August 25, 2025, the RPA Defendants filed a Motion to Dismiss. *See* ECF No. 10. In response, UGI filed an Amended Complaint on September 11, 2025. *See* Am. Compl., ECF No. 22. UGI asserts the following six counts: (I) violation of equal protection, *see* Am. Compl. ¶¶ 79-88; (II) violation of procedural due process, *see id.* ¶¶ 89-98; (III) violation of substantive due process, *see id.* ¶¶ 99-101; (IV) illegal assessment of charges in violation of City ordinances § 576-419 and § 212-144, *see id.* ¶¶ 102-111; (V) preemption by state statutory and regulatory authority, *see id.* ¶¶ 112-119 ; and (VI) preemption by state authority, *see id.* ¶¶ 120-124. The first three counts are brought pursuant to 42 U.S.C. § 1983,[1] which gives this Court federal question jurisdiction under 28 U.S.C. § 1331.

On September 25, 2025, the RPA Defendants filed a Motion to Dismiss the Amended Complaint for substantially the same reasons discussed in its Motion to Dismiss the original Complaint. *See* RPA Mot., ECF No. 26 (arguing that UGI failed to state a claim and that all six counts challenge City ordinances or seek redress for injuries caused by the City ordinances, none of which the RPA Defendants enacted). UGI filed a Response in Opposition to the Motion, asserting that the allegations are sufficient to support the claims and that the RPA Defendants are necessary parties. *See* Opp. RPA, ECF No. 30.

The City filed an Answer to the Amended Complaint on September 26, 2025. *See* Ans., ECF No. 29. A month later, the City filed a Motion for Judgment on the Pleadings, arguing that

---

[1]    The § 1983 claim also cites to 42 U.S.C. § 1988, but § 1988(b) does not authorize an independent cause of action, *see Moor v. County of Alameda*, 411 U.S. 693, 702 (1973); rather, it allows the prevailing party in an action under § 1983, to recover a "reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988(b).

the Amended Complaint fails to state a claim. *See* City Mot., ECF No. 32. UGI filed a Response in Opposition to the Motion, *see* Opp. City, ECF No. 33, to which the City filed a Reply, *see* City reply, ECF No. 34.

### B.    Factual Allegations

UGI is a regulated public utility, which provides natural gas and other utility services to residential and business/commercial customers throughout eastern and central Pennsylvania. *See* Am. Compl. ¶ 10. UGI owns and operates a network of underground natural gas distribution mains, service lines, and other facilities, including approximately 149 lineal miles of underground distribution mains within the City of Reading. *See id.* ¶ 13. In deciding where to locate its underground distribution facilities, UGI typically has two alternatives: place the facilities in existing public rights-of-way, such as streets or other federal, state or municipal properties, or on private property. *See id.* ¶¶ 14-19 (citing law regarding 15 Pa. C.S. §1511(e) and 66 Pa. C.S. § 1501).[2] UGI's use of public rights-of-way can arise in a number of situations, most commonly (i) requests for new or modified gas service, (ii) routine maintenance of its facilities, (iii) maintenance arising from reports of possible gas leaks, and (iv) projects involving replacement of existing facilities with new facilities. *See id.* ¶ 27.

To perform its work, UGI needs space to park UGI's and its subcontractors' vehicles and equipment, thereby necessitating limitations on parking of other vehicles on those streets by members of the public. *See id.* ¶¶ 28, 34. As such, UGI alleges that the issuance of a road-opening permit by either a local municipality or by PennDOT (for state highways) necessarily includes the right of the public utility to limit or prevent parking within the area needed to

---

[2]    The Amended Complaint contains numerous conclusory allegations and legal citations, which are not entitled to the presumption of truth and are not all summarized herein. Where necessary, the Court will discuss any applicable law in its analysis.

perform the road-opening work which is the subject of the permit issued. *See id.* ¶ 35. Before performing work on streets and roads within the jurisdiction and authority of the City of Reading, UGI has routinely applied to the Public Works Department of the City of Reading to obtain road-opening permits, and in conjunction therewith, has paid the appropriate fees and submitted required paperwork pursuant to the City's road-opening Ordinance. *See id.* ¶ 36.[3]

In a substantial number of municipalities, UGI is permitted to post its own No-Parking Signs in conjunction with performing work on those streets. *See id.* ¶ 29. This "is a simple and straightforward process of having an inventory of signs, and using appropriate markers to indicate the dates and times during which there should be no parking on the streets, posting those signs in areas visible to the public before work commences, and leaving them posted while work is being performed, and then removing those signs when the utility work is concluded." *See id.* ¶¶ 30, 61. UGI and its contractors, in the ordinary course of business, have in their possession basic No Parking signs. *See id.* ¶ 52 and UGI Sign, Ex. B. However, the posting of No Parking signs in the City of Reading is handled entirely by the RPA. *See id.* ¶ 30. To obtain No Parking signs from the RPA, UGI submits to the RPA a written request to obtain a certain number of signs; the request identifies the dates during which there would be no parking, the applicable time period when parking is to be prohibited (typically 7:00 a.m. to 6:00 p.m.), and the specific street or streets and block(s) thereof involved. *See id.* ¶ 55 and RPA Sign, Ex. C. UGI avers that the costs and expenses associated with the RPA issuing No-Parking signs are minimal, and include materials for the signs themselves, markers to write the dates, days of the week, and times when no parking is allowed, and one trip to the location where the signs are to be posted.

---

[3]     Where its work is on state highways, UGI applies to, pays fees to, and obtains permits from PennDOT. *See* Am. Compl. ¶¶ 37-45 (citing law governing such permits).

*See id.* ¶ 88.  UGI believes that it should take no more than fifteen to twenty minutes for an RPA employee to post a full city block with No Parking signs and a similar amount of time to take down the signs.  *See id.* ¶¶ 62-63.

The City Defendants do not incur any costs or expenses in connection with the posting of such signs; rather, all costs and expenses are incurred exclusively by the RPA.  *See id.* ¶ 31. However, the City of Reading charges allegedly "excessive and unreasonable No-Parking signage fees, on both state roads/highways as well as City streets."  *See id.* ¶ 47.  The total fees charged by the City of Reading and RPA to UGI for No Parking signs for the period of 2019 to the date of the Amended Complaint exceeds $6.8 Million.  *See id.* ¶ 87.  These charges are assessed in accordance with local ordinances, which were adopted by the City Defendants.  *See id.* ¶ 48.  RPA, which allegedly concocted numbers to give to City Council to use in determining the fees, implements the ordinances by assessing and collecting the allegedly "excessive" fees and controlling the issuance of No-Parking signs.  *See id.* ¶¶ 48, 57.  UGI alleges that by § 576-419 and § 212-144 of its ordinances, the City of Reading, in collaboration with the RPA, is attempting to illegally regulate public utility occupancy of City streets by charging "excessive fees and costs."  *See id.* ¶ 51 and Ordinances, Ex. A.[4]  UGI is charged $25.00 per sign per day,

---

[4]     The two challenged ordinances are § 576-419 (Daily parking permits) and § 212-144. Section 576-419 explains, *inter alia*,: "Daily parking permits are designed to make legal parking more convenient by having motorists prepay a required fee in return for the posting of a no-parking sign by the Reading Parking Authority. These signs are intended for short-term use that will not exceed two weeks; they shall not be used in place of long term off- street parking."  *See* Am. Compl. at Ordinances, Ex. A.  Section 212-144 lists the cost for a daily parking permit as follows:
> $25/day nonmetered
> $25/ day metered
> $10/day funeral
> $10/day owner in front of his/her non- residence property
> $1/day resident in front of his/her personal residence
> $1/day church

while a City resident is charged only $1.00 per sign per day for a space in front of his/her residential property, as are municipal entities or authorities, such as the Reading Area Water Authority.  *See id.* ¶¶ 66-67.

During 2024, UGI had discussions with various representatives of the City of Reading, Reading City Council, and the RPA to attempt to resolve this allegedly improper treatment concerning the issuance of, and fees charged for obtaining, "No Parking" signs from the RPA to complete work issued permits.  *See id.* ¶ 74.  By late spring 2025, after UGI representatives attended a Reading City Council meeting on April 25, 2025, and realized that UGI's requests for information underlying the fees charged was still being rejected, "it was clear the parties had reached an impasse."  *See id.* ¶ 76.[5]

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  This Court construes *pro se* pleadings liberally.  *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a

---

$1/day city agencies and authorities
$2/sign lamination (optional added cost per sign)

*Id.*

[5]    The Amended Complaint contains additional allegations regarding allegedly baseless citations issued less than a week following that meeting.  *See* Am. Compl. ¶¶ 76-78.  UGI avers that Batista, who had ultimate control and decision-making authority over all officers, employees, and agents of the RPA, had direct communications with the hearing officer, which impacted the outcome of those proceedings.  *See* ¶¶ 69-73, 78.  Because these allegations do not relate to the § 1983 claims, they are not detailed herein.

plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (A "document integral to or explicitly relied upon in the complaint may be considered." (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The defendant bears the burden of demonstrating the plaintiff failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.        Motion for Judgment on the Pleadings – Review of Applicable Law**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "In deciding a motion for judgment on the pleadings under Rule 12(c), the Court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents attached to the motion—provided the claims are based on these documents." *Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6-7 (E.D. Pa. Mar. 2, 2021).  *See also Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 U.S. Dist. LEXIS 120109, at *6 (E.D. Pa. Nov. 12, 2010) (explaining that the notable difference between the standard under 12(b)(6) and 12(c) is "that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings" (internal quotations omitted)). "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. [The court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (internal citations omitted).

**C.        Section 1983 Claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "To state a claim under §

041126

1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48. The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### D.    Equal Protection Claims - Review of Applicable Law

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on a § 1983 equal protection claim, Plaintiff must allege facts

demonstrating 'purposeful discrimination' and that he 'receiv[ed] different treatment from that received by other individuals similarly situated.'" *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015) (internal citations omitted), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016). "To meet the prima facie elements, Plaintiff must allege that he was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Id.* (italics omitted) (citing *Oliveira v. Twp. of Irvington*, 41 Fed. Appx. 555, 559 (3d Cir. 2002); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). *See also Cash v. Wetzel*, 8 F. Supp. 3d 644, 664 (E.D. Pa. 2014). To state a claim for a "class-of-one" equal protection violation, a plaintiff must allege that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

### E. Due Process Claims - Review of Applicable Law

The Fourteenth Amendment provides: "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)), or "it may arise from an expectation or interest created by state laws or policies," *see id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). By contrast, property interests are not created by the Constitution. *See The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Rather, "[c]ore to the existence of an individual property interest is the requirement that the plaintiff have 'a legitimate claim of entitlement to' the interest at issue that stems from 'an independent source such as state law' or 'rules or understandings that secure certain benefits.'" *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 415 (3d Cir. 2021) (quoting *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960 (3d Cir. 2019) (quoting *Roth*, 408 U.S. at 577)). "The Supreme Court has made clear 'that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Geisenberger*, 17 F.4th at 415 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). After determining the interest at stake, the next question is what process is due to protect this interest. *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "The touchstone of due process is the protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.

### 1.    Procedural Due Process - Review of Applicable Law

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). As to the second element, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Additionally, to assert a procedural due process claim against a state actor, the plaintiff "must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process.'" *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,

11

1277 (3d Cir. 1994)). A "state may cure a procedural deprivation by providing a later procedural remedy." *Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 297 (E.D. Pa. 2019) (referencing *Marchionni v. SEPTA*, No. 98-6491, 2000 WL 730348, at *2 (E.D. Pa. June 7, 2000)).

### 2.    Substantive Due Process – Review of Applicable Law

"Substantive due process contains two lines of inquiry: one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action." *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). "Typically, a legislative act will withstand substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (cleaned up). *See also FCC v. Beach Commc'ns*, 508 U.S. 307, 314-15 (1993) ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."). "On rational-basis review, a classification in a statute . . . bear[s] a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Beach Commc'ns*, 508 U.S. at 314-15 (cleaned up). "The rational basis test . . . requires significant deference to the legislature's decision-making and assumptions." *Id.*

### F.    Supplemental Jurisdiction - Review of Applicable Law

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim. . . if . . . [it] has dismissed all claims over which it has original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental

jurisdiction, the district courts should consider factors such as judicial economy, convenience, and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them"). The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id*.

## IV.    ANALYSIS

### A.    The equal protection claim in Count I is dismissed.

UGI alleges that the difference in fees charged to various No Parking sign applicants for the same basic service from the RPA "causes persons and entities which are similarly situated to be treated differently" and "is discriminatory, unreasonable and excessive, and violates UGI's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *See* Am Compl. ¶¶ 83-84. Defendants argue that the equal protection claim should be dismissed because UGI fails to identify a similarly situated entity (comparator). *See* RPA Mot. 8-12; City Mot. 12-13.

UGI, which is not a member of a protected class, may pursue a "class-of-one" equal protection claim by showing that it was treated differently from others similarly situated without a rational basis for the difference in treatment. *See Hill*, 455 F.3d at 239. A class-of-one equal protection claim "requires an extremely high degree of similarity." *Billy Boy Real Est. LLC v. Upper Merion Twp.*, 781 F. Supp. 3d 333, 350 n.128 (E.D. Pa. 2025) (internal quotations and citations omitted). The Amended Complaint, which makes only conclusory allegations that UGI was treated differently than "similarly situated" entities, does not satisfy this burden. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (dismissing the plaintiff's equal

protection claim because his "bald assertion that other [persons] were treated in a dissimilar manner" and "conclusory allegation that [the defendant's] conduct deprived him of his rights under the Equal Protection Clause was insufficient even under the liberal notice pleading standard of Rule 8(a)"). UGI's suggestion[6] that all applicants for "No Parking" signs,[7] which would include, *inter alia*, persons attending a funeral, homeowners/residents in front of their property, churches, and city agencies/authorities,[8] are similarly situated is unsupported.[9] *See, e.g. Gould v. Council of Bristol Borough*, No. 13-4016, 2014 U.S. Dist. LEXIS 184313, at *4-5 (E.D. Pa. Aug. 11, 2014) (finding that a "larger redevelopment project in Bristol Town Center, which required more complex zoning variances" was not similarly situated to the plaintiff's development property with respect to zoning approval). There are no allegations that UGI was treated differently than any other commercial entity, which are all required to pay the $25 daily parking permit rate under the Ordinance. *See* Ordinance § 212-144. Accordingly, UGI fails to sufficiently plead an equal protection claim.[10] *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("The problem of legislative classification is a perennial one. . . . The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.").

---

[6]    *See* Opp. City Mot. 17
[7]    The references herein to daily parking permits and No Parking signs are interchangeable.
[8]    *See* Ordinance § 212-144
[9]    This conclusion is further supported by the Court's discussion below regarding UGI's substantive due process claim.
[10]    The claim also fails because the allegation that the different treatment "is not rationally related to achievement of a legitimate public purpose," *see, e.g.* Am. Compl. ¶ 86, is conclusory, *see Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim); *Ferguson v. City of Phila. Dep't of Hum. Servs.*, No. 25-CV-6419, 2026 U.S. Dist. LEXIS 13851, at *12-13 (E.D. Pa. Jan. 26, 2026) (dismissing the equal protection claim because the plaintiff's "allegation that she was treated differently than other similarly situated individuals without a rational basis is conclusory and insufficient to state a plausible equal protection claim"). Contrary to UGI's conclusory allegation, there is a rational basis for the different treatment as discussed in greater detail below with respect to the substantive due process claim.

This claim (Count I) is dismissed with prejudice[11] as to all Defendants.[12]

**B.      The procedural due process claim in Count II is dismissed.**

UGI asserts that the imposition of excessive fees constitutes a procedural due process violation. *See* Am. Compl. ¶¶ 97-98 (citing *Oracle v. Santa Cruz Cnty. Planning Dep't*, No. C 09-373 JF (PVT), 2009 U.S. Dist. LEXIS 41754, at *23-24 (N.D. Cal. May 15, 2009) (stating that "the imposition of excessive fees may constitute a due process violation for which [the plaintiffs] may be entitled to compensatory damages" (citing *ITT Lyndon Life Ins. Co. v. Crist*, 778 S.W.2d 27, 28 (Mo. App. 1989); *Krupp v. Breckenridge Sanitation Dist.*, 1 P.3d 178, 183 (Colo. App. 1999))). "The total of No Parking sign fees charged by the City of Reading and RPA to UGI for the period from 2019 to the present is in excess of $6.8 Million." *See id.* ¶ 87. Through counsel, UGI communicated with the City Solicitor's Office, as well as the Solicitor for RPA and Reading City Council, to resolve and obtain relief from the fees, but they refused to reduce the fees. *See id.* ¶ 95. Defendants move to dismiss this claim because the protections of

---

[11]      For the reasons set forth herein and because UGI previously amended the complaint after receiving notice of Defendants' arguments to dismiss, this Court finds that further leave to amend would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court may deny leave to amend if a complaint is vulnerable to 12(b)(6) dismissal, if an "amendment would be inequitable or futile"); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."), *cert. denied* 537 U.S. 1113 (2003); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment").

[12]      The RPA Defendants are also dismissed for lack of personal involvement because UGI's equal protection claim is based on the different treatment of applicants in the City's Ordinance, which the RPA Defendants merely enforced. *See Iqbal*, 556 U.S. at 676 (holding that to state a claim under § 1983, to which "vicarious liability is inapplicable, . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Rosado v. Dugan*, No. 19-5068, 2022 U.S. Dist. LEXIS 4926, at *2 n.1 (E.D. Pa. Jan. 11, 2022) (explaining that allegations that a defendant is "'legally responsible' for the enforcement of unconstitutional statutes" against the plaintiff is not sufficient personal involvement to state a claim under § 1983).

procedural due process do not extend to legislative acts, including the City's Ordinance that required the fees. *See* RPA Mot.[13] 10-11; City Mot. 16-17.

Although Defendants are correct that "the protections of procedural due process do not extend to legislative actions," *Rogin v. Bensalem Twp.*, 616 F.2d 680, 693 (3d Cir. 1980) (citing *In Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U.S. 441 (1915)[14]); UGI is not alleging that it was denied due process related to the enactment of the City ordinances setting the parking permit fees; rather, UGI alleges that it was denied due process when Defendants charged the allegedly "excessive" fees. *See* Am Compl. ¶ 96. Defendants' actions in charging UGI in accordance with the rates in the Ordinance were administrative, not legislative, in nature.[15] *See Rogin*, 616 F.2d at 694 (finding that the actions of the Zoning Officer and Zoning Hearing Board in applying Township policies "were administrative in nature"). Thus, the procedural due process claim is properly before the Court. *See id.*

---

[13]     The RPA Defendants also move to dismiss for lack of personal involvement, but UGI's allegations are sufficient to create a reasonable inference that the RPA Defendants may have had some discretion to charge UGI and/or to reduce UGI's bill. *See* Am. Compl. ¶¶ 95-96.

[14]     In reaching this holding, the Court explained:

Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. . . . There must be a limit to individual argument in such matters if government is to go on.

*Bi-Metallic Inv. Co.*, 239 U.S. at 445.

[15]     *See* Opp. RPA 24-25 ("UGI's procedural due process claim against the RPA Defendants is not predicated upon 'legislative acts' taken by the RPA Defendants. Instead, it is predicated on the administrative acts taken by them, including enforcing and collecting literally millions of dollars of illegally excessive and impermissible fees.").

(concluding that the plaintiff was "entitled to claim the procedural protections of the due process clause in challenging the officials' refusal to grant it further building permits").

Nevertheless, UGI fails to sufficiently state a claim. UGI does not suggest that it did not have notice of the parking permit fees, that it did not have a right to be heard, or that it was denied counsel, nor does UGI make any factual allegations regarding a deficiency in the process of challenging the fees. *See Rogin*, 616 F.2d at 695 (determining that the plaintiff failed to state a colorable procedural due process claim because he made no specific allegation of deficiency in the process for challenging zoning ordinances). Rather, UGI admits that its counsel communicated with Defendants in an attempt to obtain relief from the fees. *See* Am. Compl. ¶ 95. "Simply because plaintiff was unhappy with the result does not implicate a violation of his constitutional rights to procedural due process." *Koynok v. Lloyd*, No. 06cv1200, 2010 U.S. Dist. LEXIS 19868, at *21 (W.D. Pa. Mar. 5, 2010). *See also Lacombe v. McKenna*, No. 16-198-LPS, 2016 U.S. Dist. LEXIS 155403, at *7-8 (D. Del. Nov. 9, 2016) (dismissing the due process claim because there were no allegations that the plaintiff was deprived of the opportunity to be heard; rather, he was unhappy with the results).

To the extent this Count is based on the Excessive Fines Clause of the Eighth Amendment,[16] *see Timbs v. Indiana*, 586 U.S. 146, 149-50 (2019) (holding that the Due Process Clause of the Fourteenth Amendment makes the Excessive Fines Clause of the Eighth Amendment applicable to the States), it fails because UGI does not allege, nor are there any facts to suggest, that the daily parking permit fee is a "fine" or that it constitutes "punishment." *See United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (outlining the two elements of a claim

---

[16]   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." USCS Const. Amend. 8.

under the Excessive Clause of the Eighth Amendment as: (1) the fine constitutes punishment and (2) the amount of the fine is grossly disproportional to the gravity of the offense).  "The term 'fine' refers to punishment for a criminal offense."  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000) (citing *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).  At the time that the Eighth Amendment was enacted, "as now, fines were assessed in criminal, rather than in private civil, actions."  *Browning-Ferris Indus.*, 492 U.S. at 265.  Moreover, neither the Supreme Court nor the Third Circuit Court of Appeals has found that the Excessive Fines Clause applies to civil penalties.  *Accord Novartis Pharm. Corp. v. Sec'y United States HHS*, 155 F.4th 223, 234 (3d Cir. 2025) ("The Supreme Court has reserved the question of whether the Excessive Fines Clause applies to civil penalties imposed without any connection to criminal conduct." (citing *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262-64 (1989))).

This Count also fails if analyzed under the Fifth Amendment.[17]  *See F.P. Dev., LLC v. Charter Twp. of Canton*, 456 F. Supp. 3d 879, 897 (E.D. Mich. 2020) (finding that the plaintiff's argument that the tree removal permit fees were excessive was "more properly analyzed under the Fifth Amendment Takings Clause").  The Fifth Amendment, which is applied to the states under the Fourteenth Amendment, cannot compel a state to "compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Bennis v. Michigan*, 516 U.S. 442, 452 (1996); *See also United States v. Fuller*, 409 U.S. 488, 492 (1973) (There is a "general principle that the Government as condemnor may not be required to compensate a condemnee for elements of value that the

---

[17]     The Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."  USCS Const. Amend. 5.

Government has created, or that it might have destroyed under the exercise of governmental authority other than the power of eminent domain."); *Shaheed v. City of Wilmington*, No. 21-1333, 2022 U.S. Dist. LEXIS 206857, at *21-22 (D. Del. Nov. 15, 2022) (dismissing Fifth Amendment claim arising after the City towed and impounded the plaintiff's car and then, when she was unable to pay to have the car released, scrapped the car).

This claim (Count II) is dismissed with prejudice[18] as to all Defendants.

### C. The substantive due process claim in Count III is dismissed.

The Amended Complaint alleges that the City ordinances, "particularly the different fees charged to different applicants for No Parking signs," constitute a violation of substantive due process because Defendants "cannot demonstrate (1) the existence of a legitimate state/City interest that (2) could be rationally furthered by the ordinances." *See* Am. Compl. ¶¶ 99-101. UGI asserts that under the ordinances "non-residential property owners, meaning commercial property owners seeking No-Parking signs, are charged $10.00 per day per sign respectively (along with funeral homes) everyone else being charged $1.00 per sign per day, leaving no other potential users of No-Parking signs, other than public utilities, which are assessed the grossly disproportionate $25.00 per day per sign fee for both metered and non-metered streets." *See* Opp. City 25-26. Based on its assertion that all other commercial entities are charged $10.00 per sign per day, UGI argues that it "is a public utility inappropriately singled out and required to pay an irrationally excessive fee." *See id.* at 26. UGI argues that because the same materials, time and effort are utilized regardless of who is the recipient of a No-Parking sign, "there is no

---

18      This Court finds that leave to amend would be futile. *See Alston*, 363 F.3d at 235; *Krantz*, 305 F.3d at 144-45; *Lorenz*, 1 F.3d at 1414.

rational basis for assessing public utilities a greater fee for those signs, than the amount charged to every other user of those signs." *See id.* at 25.

In their Motion for Judgment on the Pleadings, the City Defendants contends that the "ordinances apply to any commercial entity seeking No Parking Signs in the City of Reading and do not single out UGI or other entities like UGI." *See* City Mot. 15. The City Defendants argue that UGI cannot sustain a substantive due process claim because UGI has not sufficiently pled that the fees charged for the No Parking signs lack a rational relation to all legitimate state interests. *See id.* The City Defendants assert that they have "a legitimate objective in regulating who, when, and how commercial enterprises block off parking spaces on public roadways." *Id.*

The City Defendants are correct. Initially, this Court finds that UGI's allegations (and substantive due process claim) are based on an incorrect reading of the ordinances in at least three ways. First, contrary to UGI's suggestion, Ordinance § 212-144 does not provide that "non-residential property owners . . . are charged $10.00 per day per sign;"[19] rather, it states "$10/day owner in front of his/her non-residence property." This does not only "mean[] commercial property owners,"[20] but also includes homeowners that rent out their properties. Second, contrary to UGI's contention, "everyone else" (apart from commercial property owners) are not charged $1.00 per sign per day.[21] Instead, pursuant to the Ordinance, individuals and commercial entities, such as landscape workers and construction companies, that want a permit to park outside someone else's home also must pay $25.00 per sign per day. Individuals or commercial entities, such as customers and delivery companies, that want a permit to park outside a commercial establishment would also have to pay $25.00 per sign per day. Third, as

---

[19]    *See* Opp. City 25-26
[20]    *See* Opp. City 25-26
[21]    *See* Opp. City 25-26

the prior examples show, UGI's argument that there are "no other potential users of No-Parking signs, other than public utilities" is clearly wrong. Nothing in the ordinances suggest that public utilities are treated differently than other commercial entities (or most other individuals).[22]

Moreover, UGI's conclusory allegations that the City cannot show a legitimate state/City interest that could be rationally furthered by the ordinances, *see* Am. Compl. ¶¶ 99-101, is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim); *Madden v. Kentucky*, 309 U.S. 83, 88 (1940) ("The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."). The City has identified a legitimate state interest that the City Council could rationally conclude was served by the ordinances, specifically: regulating who, when, and how commercial enterprises block off parking spaces on public roadways. The City also has an interest in controlling who, when, and how vehicles park in residential areas in order to protect property values, control noise, and ensure safe community neighborhoods. The different parking permit fees in City Ordinance § 212-144 are rationally related to these interests. The lower fees, for individuals in front of their personal residences, churches, city agencies/authorities, funerals, and homeowners, apply to individuals/entities that are less likely to have adverse effects on the character of neighborhoods, property values, or other matters affecting public safety. These groups are also less likely to drive large vehicles, which may cause traffic noise/congestion and increase the wear/tear of roads. Although UGI alleges that the City Defendants do not incur any costs or expenses in connection with the posting of No Parking signs, this does not mean that the City does/will not incur any costs (such as road maintenance) if parking on public roadways is not regulated. Because the rates in Ordinance § 212-144 are rationally related to a legitimate

---

[22]    This also supports the dismissal of UGI's equal protection claim, discussed *infra*.

City/state interest and this Court presumes the validity of the same, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."), judgment is entered in favor of the City Defendants on the substantive due process claim in Count III.  For these reasons, as well as their lack of personal involvement,[23] the RPA Defendants are dismissed with prejudice[24] from Count III.

### D.    This Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

Because all federal claims have been dismissed and given the early stage of the proceedings, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  It is in the interests of justice and of comity to allow the Pennsylvania courts to adjudicate claims challenging City ordinances that are allegedly in violation of state law.  *See*

---

[23]    The RPA Defendants move to dismiss for lack of personal involvement.  *See* RPA Mot. 6-8.  UGI does not respond to this argument in its opposition brief.  *See* Opp. RPA Mot.  The substantive due process claim is based on the constitutionality of the City's ordinances, which the RPA Defendants simply enforced.  There are no allegations that the RPA Defendants did not strictly comply with the ordinances.  *Accord Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000) ("Evidence that the government acted improperly for 'reasons unrelated to the merits of the application for the permits' may support a finding that the government arbitrarily or irrationally abused its power in violation of substantive due process.").  Thus, the RPA Defendants are dismissed for lack of personal involvement.  *See Iqbal*, 556 U.S. at 676 (holding that "vicarious liability is inapplicable" to a claim under § 1983); *Rosado*, 2022 U.S. Dist. LEXIS 4926, at *2 n.1 (stating that a defendant who is simply "'legally responsible' for the enforcement of unconstitutional statutes" is not sufficient personal involvement to state a claim under § 1983).  To the extent the Amended Complaint alleges that RPA "concoct[ed] the numbers" that formed the basis of the Ordinances and acted "in collaboration" with the City of Reading to, *inter alia*, charge "excessive fees and costs," *see* Am. Compl. ¶¶ 48, 51, 57, these conclusory allegations are insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim); *Jacobs v. City of Pittsburgh*, No. 08-470, 2011 U.S. Dist. LEXIS 44617, at *22 (W.D. Pa. Feb. 18, 2011) ("Conclusory statements, such as they acted 'in cahoots', or that they 'conspired to, and did, concoct a story[,]' simply are insufficient to impute liability onto Moving Defendants under Section 1983.").

[24]    This Court finds that leave to amend would be futile.  *See Alston*, 363 F.3d at 235; *Krantz*, 305 F.3d at 144-45; *Lorenz*, 1 F.3d at 1414.

*Martell's Tiki Bar, Inc. v. Governing Body of Point Pleasant Beach*, No. 13-5676, 2015 U.S. Dist. LEXIS 2845, at *41-42 (D.N.J. Jan. 9, 2015) ("Comity concerns strongly support declining to exercise supplemental jurisdiction over the remaining state-law issues" regarding the application to the state ordinances.).

Counts IV, V, and VI are dismissed without prejudice to an action to be filed in state court.  It is important for the parties to know that the period of limitations for these claims was tolled during the pendency of this action and "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

## V.    CONCLUSION

The Reading City ordinances, which establish the rates for daily parking permits (No Parking signs), are based on categories that are rationally related to the City's legitimate city/state interests in regulating commercial enterprises that block parking spaces on public roadways and vehicles that park in residential areas.  The RPA strictly enforced these Ordinances and did not treat UGI differently than any other commercial entity.  Therefore, UGI cannot sustain an equal protection or due process claim.  In the absence of a federal claim, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims in the interest of comity.  Defendants' motions are granted, and the case is dismissed.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

23
041126